## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WENDY KEAHEY, | : | |
| *Plaintiff* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FEDERATED LIFE | : | |
| INSURANCE COMPANY, | : | No. 20-6419 |
| *Defendant* | : | |

### MEMORANDUM

PRATTER, J.                                                                                           DECEMBER 10, 2021

Wendy Keahey[1] sued her insurer, Federal Life Insurance Company ("Federated") for breach of contract related to termination of her disability benefits. Federated moved to dismiss Ms. Keahey's claim as untimely pursuant to Rule 12(b)(6).[2] Because the Court determined that Ms. Keahey's breach of contract claim was untimely under the policy terms even if the Court granted equitable tolling for statute of limitations purposes, the Court granted Federated's motion to dismiss.

Ms. Keahey now asks the Court to reconsider this dismissal. She argues that the Court's reading of her insurance policy constituted clear legal error because the Court misinterpreted the policy or, in the alternative, the policy was ambiguous. Because Ms. Keahey is incorrect that that the Court's reading constituted legal error and because her arguments would not change the outcome of the case even if she was correct, the Court denies Ms. Keahey's motion for reconsideration.

---

[1] Ms. Keahey's name is spelled on the docket as "Keahy," but her court filings suggest that "Keahey" is the correct spelling.

[2] Federated also moved to dismiss Ms. Keahey's bad faith claim (Count II) as untimely based on the two-year statute of limitations, but she withdrew the statutory bad faith claim in her opposition to the motion to dismiss.

1

## LEGAL STANDARD

In the context of a motion for reconsideration, "courts will reconsider an issue when there has been an intervening change in the controlling law, when new evidence has become available, or when there is a need to correct a clear error or prevent manifest injustice." *NL Indus., Inc. v. Com. Union Ins. Co.*, 65 F.3d 314, 324 n.8 (3d Cir. 1995). The Third Circuit Court of Appeals has "never adopted strict or precise definitions for 'clear error of law or fact' and 'manifest injustice' in the context of a motion for reconsideration," but "the focus is on the gravity and overtness of the error." *In re Energy Future Holdings Corp.*, 904 F.3d 298, 311–12 (3d Cir. 2018). The movant "must show more than mere disagreement with the earlier ruling." *Id.* at 312. "A motion for reconsideration addresses only factual and legal matters that the Court may have overlooked. It is improper on a motion for reconsideration to ask the Court to rethink what it had already thought through—rightly or wrongly." *United States v. Cephalon, Inc.*, 159 F. Supp. 3d 550, 555 (E.D. Pa. 2016) (internal quotation omitted). "Where the moving party argues that the court overlooked certain evidence or controlling decisions of law which were previously presented, a court should grant a motion for reconsideration only if the issues overlooked might reasonably have resulted in a different conclusion." *Elgert v. Siemens Indus., Inc.*, No. 17-cv-1985, 2019 WL 3976409, at *5 (E.D. Pa. Aug. 22, 2019).

"Due to the strong interest by the judiciary in the finality of its decisions, the reconsideration of a court's judgment is an extraordinary remedy, and therefore, should be granted sparingly." *U.S. ex rel. Ryan v. Endo Pharms., Inc.*, 27 F. Supp. 3d 615, 634 (E.D. Pa. 2014), *aff'd sub nom. U.S. ex rel. Dhillon v. Endo Pharms.*, 617 F. App'x 208 (3d Cir. 2015). "The moving party bears a substantial burden, which cannot be satisfied through 'recapitulation of the cases and arguments considered by the court before rendering its original decision.'" *Cephalon*, 159 F. Supp.

2

3d at 555 (quoting *Young Jewish Leadership Concepts v. 939 HKH Corp.*, No. 93-cv-2643, 1994 WL 184410, at *1 (E.D. Pa. May 10, 1994)).

## DISCUSSION

To render her complaint timely, Ms. Keahey asks the Court to climb the following steps: (1) grant the motion to reconsider available only for extraordinary circumstances, in order to (2) provide the extraordinary remedy of equitable tolling, and then, based on the tolled start date, (3) find that her policy is ambiguous and construe it to allow an extra nine months to file a proof of loss that Ms. Keahey did not file in this time period. For the reasons explained below, the Court declines to do so.

### I. The Court's Analysis Does Not Constitute Legal Error

This Court dismissed Ms. Keahey's complaint as untimely because, even if it were to allow equitable tolling as argued by Ms. Keahey for the statute of limitations, her claim would still be untimely under the plain language of her policy's Legal Actions contractual provision. Ms. Keahey argues that her "Complaint was timely under the unambiguous terms of the Policy and [this Court's] misinterpretation of the Policy terms constitutes a clear error resulting in manifest injustice to Plaintiff."[3] The Court disagrees with Ms. Keahey's assessment.

"In the Third Circuit, a motion for reconsideration, even where purportedly grounded on the court's commission of clear error, is not to be used merely as an opportunity to reargue issues that the court has already analyzed and determined." *The Ltd., Inc. v. Cigna Ins. Co.*, 228 F. Supp.

---

[3] Ms. Keahey cites four cases without explanation to support this point. The pincites correspond with each court's basic recitation of the standards for a motion for reconsideration and each court in the cited cases then denied the motion for reconsideration in question. *See The Ltd., Inc. v. Cigna Ins. Co.*, 228 F. Supp. 2d 574, 583–84 (E.D. Pa. 2001), *aff'd*, 29 F. App'x 88 (3d Cir. 2002); *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 912 (3d Cir. 1985); *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1123 (E.D. Pa. 1993); *Jarzyna v. Home Props., L.P.*, 185 F. Supp. 3d 612, 627 (E.D. Pa. 2016), *aff'd*, 783 F. App'x 223 (3d Cir. 2019).

2d 574, 582 (E.D. Pa. 2001), *aff'd*, 29 F. App'x 88 (3d Cir. 2002). Ms. Keahey argues that the "Court erred in holding that Plaintiff was required to show that it was impossible for her to submit proof of disability within 90 days or that she actually submitted proof of loss within a year in order for the one-year period to apply in this case." However, this is not a matter that the Court overlooked. In its Opinion, the Court quoted the relevant proof of loss provision in full:

> You must send us proof of your disability and any other proof of reduced income that may be required within 90 days of each monthly benefit claimed. . . . If it isn't possible to send proof within 90 days, send it as soon as reasonably possible. . . . In any event, the proof required must be given no later than one year from the time specified unless you were not then competent to make the claim.

The "Legal Actions provision" requires proof of loss within 90 days and states that no action may be brought later than three years after this proof of loss. Ms. Keahey, in opposing Federated's Motion to Dismiss, argued that the provision extending this 90-day proof of loss timeline to one year "[i]f it isn't possible to send proof within 90 days" actually extends the proof of loss period to a full year, for a total of four years to coincide with the statute of limitations. The Court rejected this argument, noting: "While Ms. Keahey argues that the one-year extended deadline should apply instead of the standard 90 days, she does not allege any facts to support an inference that it was not 'possible to send proof within 90 days' under the terms of the Policy. Nor does Ms. Keahey allege that she submitted any further 'proof' after March 23, 2017 that should toll the Legal Actions provision."

Ms. Keahey now reiterates the very same point, citing *Yingling v. UNUM Life Ins. Co. of Am.*, 959 F. Supp. 251 (M.D. Pa. 1997), to argue that "this language places an outside limit of one year from the end of the elimination period to file a proof of claim." (Doc. No. 15-2, at 6) (quoting *Yingling*, 959 F. Supp. at 255). However, in addition to the fact that her policy did not have an elimination period, the facts in *Yingling* demonstrate a key departure from Ms. Keahey's argument:

after the termination of Mr. Yingling's benefits on October 21, 1992, the insurance company invited him to submit additional proof of loss, which he submitted in September 1993. *Yingling*, 959 F. Supp. at 255. As this Court has already found, Ms. Keahey provides no reason to expand the 90-day proof of loss provision to one year in her case because she does *not* allege that she submitted such proof of loss.

Ms. Keahey also takes issue with the Court's use of the word "toll" in this context, devoting Section III.A.2 of her motion for reconsideration to this point. (*E.g.*, "The Court incorrectly refers to the one-year period in the Policy's proof-of-loss clause as 'tolling' the contractual-limitations period."). Ms. Keahey does not explain the substantive import of this point for purposes of her motion. To the extent this argument reflects genuine confusion rather than a pointless non-sequitur, the Court will clarify for her that, indeed, the contractual-limitations period does not itself require tolling. However, as a separate concept, the Court also considered whether any of Ms. Keahey's arguments for tolling the statute of limitations would also be applicable to the contractual deadline, and found no special circumstances that would toll the contractual deadline.[4]

For the reasons already explained by this Court, Ms. Keahey's claim is time-barred by her policy's Legal Actions provision.

## II. The Policy Is Not Ambiguous

In arguing against this Court's interpretation of the Proof of Loss provision, Ms. Keahey also argues for the first time in her motion for reconsideration that the policy language is ambiguous. A motion for reconsideration is not an appropriate vehicle to raise new arguments. *Elgert*, 2019 WL 3976409, at *5 (noting that a court may grant a motion for reconsideration

---

[4] In the case that Ms. Keahey cites to argue that the contractual limitations period does not require tolling, *Yingling*, the court also considered whether tolling the extended one-year period was appropriate because Mr. Yingling submitted several proofs of loss. *See Yingling*, 959 F. Supp. at 256 (noting Mr. Yingling's argument that "the contractual period of limitations is tolled").

5

"[w]here the moving party argues that the court overlooked certain evidence or controlling decisions of law which were previously presented"). Ms. Keahey did not argue that the policy was ambiguous in either her briefing or at oral argument. *See* Doc. Nos. 9, 16.

Even if she had raised such an argument, it would not change the outcome of the dismissal. An insurance policy "is not ambiguous [] merely because the parties disagree about its meaning, and policy language should not be stretched beyond its plain meaning to create an ambiguity." *Lansdale 329 Prop, LLC v. Hartford Underwriters Ins. Co.*, No. 20-cv-2034, 2021 WL 1667424, at *3 (E.D. Pa. Apr. 28, 2021). Nor can the court "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." *Frank Van's Auto Tag, LLC v. Selective Ins. Co. of the Se.*, 516 F. Supp. 3d 450, 454 (E.D. Pa. 2021) (quoting *Wilson v. Hartford Cas. Co.*, No. 20-cv-3384, 2020 WL 5820800, at *6 (E.D. Pa. Sept. 30, 2020)).

In Pennsylvania, "[t]he Commonwealth's 'rules of construction do not permit words in a contract to be treated as surplusage . . . if any reasonable meaning consistent with the other parts can be given to it.'" *Id.* at 457 (quoting *Gen. Refractories Co. v. First State Ins. Co.*, 94 F. Supp. 3d 649, 661 (E.D. Pa. 2015)). Ms. Keahey's interpretation of the proof of loss provision would render the 90-day limit meaningless surplusage because she construes the "[i]n any event" language to allow one year in all cases. As Federated points out, this is not a reasonable interpretation of the policy because it fails to give effect to the 90-day requirement for proof of disability.

Ms. Keahey herself has also conceded that actual submission of proof of loss determines the impact of the proof of loss provision on the Legal Actions provision. In her motion to dismiss briefing, she "disagree[d] with Defendant's initial assertion that the legal action provision precludes Plaintiff's claims pursuant to the contract [because] it only requires Plaintiff to make

said claim within three years of providing proof of disability to Defendants." Doc. No. 9-7, at 7. Under Ms. Keahey's alternative interpretation of the Policy, the start of the three-year period would be delayed for one year regardless of whether a policyholder submits proof of loss on Day 1 or Day 364. This is an unreasonable interpretation by Ms. Keahey's own implicit admission because the plaintiff would not be required "to make said claim within three years of providing proof of disability to Defendants." *Id.* It is simply not reasonable to argue that three years should actually be four years regardless of the timing of proof of loss.

Giving each provision effect, the only reasonable interpretation is that there is a 90-day proof of loss period unless it "isn't possible" to meet this deadline, in which case the extended period is one year. Therefore, the policy is not ambiguous.

## III.     Ms. Keahey's Claim is Also Untimely Under the Statute of Limitations

Even if the Court found that the Legal Actions provision extended to a total of four years (and is thus coextensive with the four-year statute of limitations), the outcome would not change on a motion for reconsideration. In order to find Ms. Keahey's complaint timely, the Court would also need to grant Ms. Keahey's requested tolling from September 15, 2016 to March 23, 2017. In her motion for reconsideration, Ms. Keahey acts as though the Court granted this request in arguing that her complaint would be timely with the additional year for her proof of loss. However, the Court did not previously reach this issue because Ms. Keahey's complaint was time-barred under the Legal Actions provision even if the Court allowed such tolling. ("*Even if* the Court were to agree with Ms. Keahey that the clock began on March 23, 2017 for statute of limitations purposes, this would not extend the deadline far enough to make Ms. Keahey's complaint timely

under the contract.") (emphasis added). For the sake of completeness, the Court will also explain why Ms. Keahey's complaint is untimely under the statute of limitations.

Ms. Keahey was notified of the termination of her benefits before the September 15, 2016 termination of her benefits, so the applicable statute of limitations would typically end on September 15, 2020 at the latest.[5] Federated contends that this lawsuit is barred by the statute of limitations because it was not filed until December 22, 2020. Ms. Keahey herself alleges that she did receive notice of the termination of her benefits by September 15, 2016, and does not dispute that the four-year statute of limitations applies to her breach of contract claim, but argues that Federated's letters regarding the appeals process should toll the statute of limitations.

"Equitable tolling 'can rescue a claim otherwise barred as untimely by a statute of limitations when a plaintiff has been prevented from filing in a timely manner due to sufficiently inequitable circumstances.'" *Cunningham v. M & T Bank Corp.*, 814 F.3d 156, 160 (3d Cir. 2016) (quoting *Santos ex rel. Beato v. United States*, 559 F.3d 189, 197 (3d Cir. 2009)). Under Third Circuit precedent, there are three "principal, though not exclusive, situations in which equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting her rights; or (3) where the plaintiff has timely asserted her rights mistakenly in the wrong forum." *D.J.S.-W. v. United States*, 962 F.3d 745, 750 (3d Cir. 2020) (internal quotation

---

[5] A cause of action for breach of a disability insurance contract generally accrues once the insured first learns that his or rights have been infringed under the policy. *See, e.g., Leporace v. N.Y. Life & Annuity*, No. 11-cv-2000, 2011 WL 6739446, at *3 (E.D. Pa. Dec. 21, 2011), *aff'd*, 619 F. App'x 172 (3d Cir. 2015)) ("[I]n a breach of contract claim arising from denial of an insurance claim . . . the claim accrues when the insured first knows that the benefits have been terminated."). The Court also notes that the proof of loss period does not affect the statute of limitations. *See, e.g., U.S. Bank, Nat. Ass'n v. First Am. Title Ins. Co.*, 944 F. Supp. 2d 386, 400–01 (E.D. Pa. 2013), *aff'd*, 570 F. App'x 209 (3d Cir. 2014) ("The contractual language describing what is needed for notice of a claim, proof of loss, payment of loss, etc., does not postpone the commencement of the statute of limitations; otherwise, the insured could delay in bringing a claim on a cognizable loss and thus delay the start of the limitations period indefinitely.").

omitted). Like granting a motion for reconsideration, "equitable tolling is an extraordinary remedy to be applied sparingly." *Cephalon*, 159 F. Supp. 3d at 560.

Ms. Keahey argued that the statute of limitations for her breach of contract claim should be equitably tolled because letters sent by Federated regarding the internal appeals process lulled her into a "false sense of security" that the statute of limitations would not begin to run until Federated had performed two levels of internal review of the termination of benefits.[6] She argues that the operative starting date for the statute of limitations should be March 23, 2017, when her first-level appeal was denied. Based on this date, she asserts that she had until March 23, 2021 to file her breach of contract claim.

Federated contends that an appeals process does not toll the statute of limitations, especially when the appeal process ends well before the statute of limitations has run. Federated points to *Yingling*, 959 F. Supp. at 257–58, where the court rejected a similar argument regarding a disability benefits appeal process. In *Yingling*, the plaintiff argued that the defendant should be estopped from invoking the statute of limitations when the defendant made continued requests for information (related to its review of the denial of the plaintiff's claim) which "lull[ed] him into a false sense of security." *Id.* at 256. The court found that, despite inviting the plaintiff to submit additional information for its consideration, the defendant's letter made it clear to the plaintiff that his claim had been denied. *Id.* at 258 (telling him "that it was denying the claim and closing his file"). The court concluded that the plaintiff's estoppel argument was "incorrect." *Id.*

Ms. Keahey's position is arguably stronger than Mr. Yingling's because Federated told her that "we offer two levels of internal review; once this process is exhausted you have the right to

---

[6] While the letters submitted as exhibits by Ms. Keahey fall outside the pleadings, there is no risk of prejudice in considering these documents at the motion to dismiss stage because the plaintiff had notice of the documents and herself introduced them to support her Complaint. *Schmidt*, 770 F.3d at 249.

9

take legal action." While *Yingling* could be distinguished based on this language and, in any case, is not binding on this Court, Ms. Keahey cites no case law to support her position that the appeals process should toll the statute of limitations. Federated argues, correctly, that Ms. Keahey implicitly concedes that she did not believe completion of the internal review process was necessary to file a lawsuit because she filed this lawsuit without completing the second level of review. In other words, Ms. Keahey fails to explain why the first level of review, but not the second, should toll the statute of limitations. There is no discernible basis on which this Court could rule that the statute of limitations should be tolled by the *first* level of the review process.

Further, Ms. Keahey completed her participation in the first level of the appeals process on March 23, 2017, which was well before the statute of limitations had run out. *See Yingling*, 959 F. Supp. at 258 (noting that "the plaintiff here had exhausted all of UNUM's appeal procedures well before the limitations period expired"). Therefore, the appeals process does not present "sufficiently inequitable circumstances" that "prevented [Ms. Keahey] from filing in a timely manner." *Cunningham*, 814 F.3d at 160.

Ms. Keahey's request for equitable tolling is also rendered unconvincing in light of the other "extraordinary" steps she asks this Court to take. While the Court certainly notes Ms. Keahey's frustration, time bars are meaningless if they are not enforced. The Court simply cannot stretch the law as far as Ms. Keahey asks to render her complaint timely.

## CONCLUSION

For the foregoing reasons, the Court denies Ms. Keahey's motion for reconsideration. An appropriate Order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE